ORIGINAL

N O T I C E
- - - - - -

To:  Cary Ichter, Esq.
     Meadows Ichter & Bowers
     14 Piedmont Center, Suite 1100
     3535 Piedmont Road, NE
     Atlanta, GA  30305


January 31, 2003


                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION

Claude Patterson,

                    plaintiff                 CIVIL ACTION

            v.                                NO. 1:1-cv-1152-CC

World Championship Wrestling, Inc., et al,

                    defendant


             NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
             -------------------------------------------

        On 1/30/03, World Championship Wrestling, Inc., et al,
filed a motion for  summary judgment in this Court, case document
number 78.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-
sel is hereby notified that within 20 days from the date said motion was

7b

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

> Luther D. Thomas, Clerk
> United States District Court
> Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  Kelly Jean Beard, Esq.
     Meadows Ichter & Bowers
     14 Piedmont Center, Suite 1100
     3535 Piedmont Road, NE
     Atlanta, GA  30305


January 31, 2003


                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION

Claude Patterson,

                  plaintiff                    CIVIL ACTION

          v.                                   NO. 1:1-cv-1152-CC

World Championship Wrestling, Inc., et al,

                  defendant


             NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
             --------------------------------------------


     On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 78.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

                                        Luther D. Thomas, Clerk
                                        United States District Court
                                        Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To:  Michelle Rothenberg, Esq.
     Meadows Ichter & Bowers
     14 Piedmont Center, Suite 1100
     3535 Piedmont Road, NE
     Atlanta, GA  30305

January 31, 2003

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Claude Patterson,

               plaintiff                    CIVIL ACTION

       v.                             NO. 1:1-cv-1152-CC

World Championship Wrestling, Inc., et al,

              defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
--------------------------------------------

On 1/30/03, World Championship Wrestling, Inc., et al,
filed a motion for  summary judgment in this Court, case document
number 78.

Pursuant to this Court's order dated April 14, 1987, opposing coun-
sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  John J. Dalton, Esq.
     Troutman Sanders
     Bank of America Plaza
     Suite 5200
     600 Peachtree Street, N.E.
     Atlanta, GA  30308-2216


January 31, 2003


                  UNITED STATES DISTRICT COURT
                           for the
                  NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION

Claude Patterson,

                  plaintiff                CIVIL ACTION

          v.                               NO. 1:1-cv-1152-CC

World Championship Wrestling, Inc., et al,

                  defendant


            NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
            ---------------------------------------------


     On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 78.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

> Luther D. Thomas, Clerk
> United States District Court
> Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  James Andrew Lamberth, Esq.
     Troutman Sanders
     Bank of America Plaza
     Suite 5200
     600 Peachtree Street, N.E.
     Atlanta, GA  30308-2216


January 31, 2003


                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION

Claude Patterson,

                plaintiff                    CIVIL ACTION

          v.                                 NO. 1:1-cv-1152-CC

World Championship Wrestling, Inc., et al,

                defendant


              NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
              -------------------------------------------

        On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 78.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

> Luther D. Thomas, Clerk
> United States District Court
> Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  Evan H. Pontz, Esq.
     Troutman Sanders
     Bank of America Plaza
     Suite 5200
     600 Peachtree Street, N.E.
     Atlanta, GA  30308-2216


January 31, 2003




                 UNITED STATES DISTRICT COURT
                          for the
                 NORTHERN DISTRICT OF GEORGIA
                       ATLANTA DIVISION

Claude Patterson,

                  plaintiff                 CIVIL ACTION

        v.                                  NO. 1:1-cv-1152-CC

World Championship Wrestling, Inc., et al,

                  defendant


            NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
            ----------------------------------------------


        On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 78.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

> Luther D. Thomas, Clerk
> United States District Court
> Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To:  Eric Allen Richardson, Esq.
     Troutman Sanders
     Bank of America Plaza
     Suite 5200
     600 Peachtree Street, N.E.
     Atlanta, GA  30308-2216


January 31, 2003


                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION


Claude Patterson,

                 plaintiff                 CIVIL ACTION

           v.                              NO. 1:1-cv-1152-CC

World Championship Wrestling, Inc., et al,

                 defendant


          NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
          ---------------------------------------------


     On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 78.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials,  including any affidavits, depositions, answers to interrogatories,  admissions on  file  and any other relevant materials  to be  considered  in  opposition to the  motion for  summary judgment, is required.   Federal  Rules of Civil Procedure,  Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court,  the Court will take said motion for  summary judgment  under advisement immediately upon the close of  the aforesaid  20 day period.   Id. at 519.   See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986);  Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry  of a summary judgment  by the trial court  is a final judgment on the claim or claims decided.   Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984).  Whenever the non-moving party bears the burden of proof at trial on a  dispositive issue and the party  moving for summary judgment has demonstrated the absence of any genuine issue of fact,  the nonmoving party must go  beyond the pleadings and must designate, by affidavit or other materials,  "... specific facts showing that there is a genuine issue for trial."  Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett,  477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To:  Bridget Bobick, Esq.
     Troutman Sanders
     Bank of America Plaza
     Suite 5200
     600 Peachtree Street, N.E.
     Atlanta, GA  30308-2216


January 31, 2003


                    UNITED STATES DISTRICT COURT
                             for the
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION


Claude Patterson,

                    plaintiff              CIVIL ACTION

          v.                               NO. 1:1-cv-1152-CC

World Championship Wrestling, Inc., et al,

                    defendant


              NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
              ---------------------------------------------

     On 1/30/03, World Championship Wrestling, Inc., et al,

filed a motion for  summary judgment in this Court, case document

number 78.

     Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

                                        Luther D. Thomas, Clerk
                                        United States District Court
                                        Northern District of Georgia

Copies to counsel of record

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLAUDE PATTERSON,          )
                           )
            Plaintiff,     )
                           )     CIVIL ACTION FILE
v.                         )
                           )     NO. 1:01-CV-1152-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,)
TURNER SPORTS, INC., TURNER )
ENTERTAINMENT GROUP, INC., and )
TURNER BROADCASTING SYSTEM, INC., )
                           )
            Defendants.    )

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure
and the Local Rules of this Court, Defendants Universal
Wrestling Corporation (f/k/a World Championship Wrestling,
Inc.)("WCW"), Turner Sports, Inc. ("TSI"), Turner Entertainment
Group, Inc., and Turner Broadcasting System, Inc.
("TBS")(collectively "Defendants") hereby move this Court for an
order granting summary judgment in their favor because as a
matter of law no genuine issue of material fact exists to be
tried in this case.

Defendants base this Motion on the following documents and
record evidence filed contemporaneously herewith:

1.    Defendants' Memorandum of Law in Support of
      Defendants' Motion for Summary Judgment;

2.    Deposition testimony of Claude Patterson;

3.    Deposition testimony of James Morrison;

4.    Affidavit of Diana Myers; and

5.    Defendants' Statement of Undisputed Material Facts.

This 30th day of January, 2003.

_____
JOHN J. DALTON
Georgia Bar No. 203700
JAMES A. LAMBERTH
Georgia Bar No. 431851
ERIC A. RICHARDSON
Georgia Bar No. 233873
EVAN H. PONTZ
Georgia Bar No. 583577

Attorneys for Defendants

TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000 (voice)
(404) 885-3995 (facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLAUDE PATTERSON,                      )
                                       )
                Plaintiff,             )
                                       )      CIVIL ACTION FILE
v.                                     )
                                       )      NO. 1:01-CV-1152-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,)
TURNER SPORTS, INC., TURNER            )
ENTERTAINMENT GROUP, INC., and         )
TURNER BROADCASTING SYSTEM, INC.,      )
                                       )
                Defendants.            )

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT upon the interested

parties by hand delivery to:

        Cary Ichter
        Kelly Jean Beard
        Charles Gernazian
        Michelle M. Rothenberg-Williams
        MEADOWS, ICHTER AND BOWERS, P.C.
        Fourteen Piedmont Center, Suite 1100
        3535 Piedmont Road
        Atlanta, GA 30305

This 30th day of January, 2003.

                              _Evan H. Pontz_____
                              EVAN H. PONTZ
                              Georgia Bar No. 583577

TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, N.E.
Suite 5200
Atlanta, GA  30308-2216
(404) 885-3000 (voice)
(404) 885-3995 (facsimile)

# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLAUDE PATTERSON,                    )
                                     )
              Plaintiff,             )
                                     )        CIVIL ACTION FILE
v.                                   )
                                     )        NO. 1:01-CV-1152-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,  )
TURNER SPORTS, INC., TURNER          )
ENTERTAINMENT GROUP, INC., and       )
TURNER BROADCASTING SYSTEM, INC.,    )
                                     )
              Defendants.            )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Defendants Universal Wrestling Corporation (f/k/a World
Championship Wrestling, Inc.) ("WCW"), Turner Sports, Inc.
("TSI"), Turner Entertainment Group, Inc. ("TEG"), and Turner
Broadcasting System, Inc. ("TBS") (collectively "Defendants")
submit this Memorandum of Law in Support of their Motion for
Summary Judgment on all claims brought by Plaintiff Claude
Patterson ("Patterson").

### INTRODUCTION

Patterson filed this action on May 4, 2001, alleging claims
of race discrimination under the Civil Rights Act of 1866, 42
U.S.C. § 1981, and under Title VII of the Civil Rights Act of
1964, 42 U.S.C. § 2000e et seq., and alleging a claim of age
discrimination under the Age Discrimination in Employment Act, 29

U.S.C. § 621 et seq. Patterson's lawsuit also alleges a state law claim of intentional infliction of emotional distress. With respect to Patterson's race discrimination claims, he alleges that WCW (i) discriminated against him because of his race (African-American) with regard to a position creating or writing WCW's televised wrestling programming, and (ii) subjected him to a racially hostile work environment. With respect to Patterson's age discrimination claim, he alleges that WCW discriminated against him by denying him opportunities to work with WCW because of his age. Patterson also alleges that by engaging in such discriminatory conduct, WCW intentionally caused him emotional distress. Based solely on principles of agency and vicarious liability, Patterson seeks not only to hold WCW liable for these alleged acts, but to hold TSI, TEG and TBS liable as well.

Patterson's claims are baseless. Virtually all of the alleged actions by WCW that Patterson contends support his claims of discrimination are barred by the applicable statutes of limitations. With regard to the sole alleged action by WCW that is not time-barred, there is no evidence that WCW ever denied Patterson any opportunity or treated him differently because of his race. Patterson's discrimination claims not only lack legal foundation and factual support, they are frivolous and abusive.

Accordingly, summary judgment should be granted on all of Patterson's discrimination claims.

Patterson's claim for intentional infliction of emotional distress is likewise frivolous, because this claim is based on nothing more than his allegations of race and age discrimination, which are baseless and which cannot sustain a claim for intentional infliction of emotional distress under Georgia law. Moreover, because Patterson's claims against TSI, TEG and TBS derive solely from Patterson's claims against WCW and are based on principles of agency and vicarious liability, summary judgment should be granted in favor of TSI, TEG and TBS on all of Patterson's claims.

**STATEMENT OF FACTS**

**WCW's Business**

WCW created, produced, and marketed professional wrestling events during the 1990s though March 2001. (Affidavit of Diana Myers ("Myers Aff."), at ¶ 3, a true and correct copy of which is attached hereto as Exhibit A). WCW's wrestling events were seen by live audiences and/or aired on various television networks and pay-per-view, cable and satellite systems. (Id.) A creative team of writers and producers at WCW created WCW's wrestling events, both live and taped, with the goal of entertaining wrestling fans and general audiences. (Id.) The wrestlers and other on-screen

talent who appeared in WCW's wrestling events provided their services to WCW as independent contractors, either through formal written contracts or without written agreements.  (Id. at ¶ 4).

After having commercial and financial success in the mid to late 1990s, WCW's business suffered a sharp downturn in 1999. (Myers Aff. at ¶ 6).  As a result, WCW restructured its business operations.  (Id.)  Despite WCW's efforts, its business downturn continued, and in March 2001, WCW sold certain of its assets and ceased its operations.  (Id. at ¶ 8).  After this sale was completed, WCW changed its name to Universal Wrestling Corporation.  (Id.)

**Patterson's Background and Effort To Seek Opportunities With WCW**

Claude Patterson first began wrestling professionally in 1965, under the wrestling moniker "Thunderbolt" Patterson. (Deposition of Claude Patterson (hereinafter "Patterson Dep.") at 20; First Amended Complaint ¶ 48).[1]  Patterson continued to wrestle professionally into the 1980s.  As of 1991, Patterson was no longer in top wrestling or physical condition, and newer and different faces began to dominate the wrestling industry. Patterson was consequently unable to continue earning a living as a professional wrestler and began to work for a non-profit

---

[1] Excerpts of deposition testimony and copies of deposition exhibits referenced herein are included in the Appendix, filed simultaneously herewith.

organization known as "Athletes Supporting Kids."  (Patterson Dep. at 50-51).

In late 1999, Patterson apparently contacted WCW and left telephone messages stating that he had some ideas or suggestions about WCW and the ratings of its televised wrestling programs. (Patterson Dep. at 97-99; Deposition of James Morrison, professionally known as "J.J. Dillon" (hereinafter "Dillon Dep."), at 206, Exh. 54).  Patterson's messages were forwarded to J.J. Dillon, a WCW employee at that time.  (Dillon Dep. at 206; Patterson Dep. at 97-98).  Dillon had known Patterson for many years.  Both men had previously been wrestlers together. (Patterson Dep. at 100; Dillon Dep. at 206).  Dillon spoke to Patterson, and Patterson offered several suggestions that he believed would improve the ratings of WCW's televised wrestling programs.  Patterson also expressed some interest in working for WCW and taking over the creation and writing of WCW's televised wrestling programs.  (Patterson Dep. at 97-99; Dillon Dep. at 206).

Dillon knew that Patterson had never been involved in the creative side of scripting and writing wrestling events and had no experience whatsoever creating or writing televised wrestling programs, let alone television programs at the level of sophistication of WCW's programs in 1999.  (Dillon Dep. at 207,

211, Exh. 54). Dillon also knew that Patterson had not been
involved in the wrestling industry for nearly ten years and had no
experience with the current version of televised wrestling
programs. (Id.) The style of wrestling and the content of the
wrestling storylines in television programs had evolved and
changed substantially since the time that Patterson had been a
successful professional wrestler in and before the 1980s. (Dillon
Dep. at 210-211). Dillon explained this to Patterson in a lengthy
telephone discussion, and told him that he did not see any
position for Patterson to come in and take over the writing and
creating of WCW's wrestling programs. (Id. at 210-211, Exh. 54;
Patterson Dep. at 98).

As a courtesy, Dillon mentioned Patterson's call to WCW's
President, Bill Busch, and at a WCW booking committee meeting, to
ascertain if anyone had any additional information regarding
Patterson's background or experience. Dillon did not, however,
learn any information that indicated that Patterson was in any way
qualified or capable of working for WCW and taking over the
writing and creating of WCW's live or televised wrestling
programs. (Id. at 211, Exh. 54).

## ARGUMENT AND CITATION OF AUTHORITY

### I.   THE SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate if the evidence before the
Court shows that there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a matter of
law.   Fed. R. Civ. P. 56(c); see Vason v. City of Montgomery, 240
F.3d 905, 907 (11th Cir. 2001).   To survive summary judgment, the
nonmoving party must come forward with concrete evidence in the
form of *specific facts* showing that there is a genuine issue for
trial."   Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S.
574, 587 (1986) (emphasis added).

The *summary judgment* rule applies with equal force in
discrimination cases.   The Eleventh Circuit recently held:

> While acknowledging that questions of fact in job
> discrimination cases are "both sensitive and difficult"
> and "[t]here will seldom be 'eyewitness' testimony as
> to the employer's mental processes," the [U.S.] Supreme
> Court has told us that "none of this means that trial
> courts or reviewing courts should treat discrimination
> differently from other ultimate questions of fact."
> St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524
> (1993).  ...And quite recently, the [U.S. Supreme]
> Court rejected a rule which would have made it easier
> for job discrimination plaintiffs to get their case to
> a jury, explaining that "[t]o hold otherwise would be
> effectively to insulate an entire category of
> employment discrimination cases from [appropriate]
> review..., and we have reiterated that trial courts
> should not treat discrimination differently from other
> ultimate questions of fact."  Patterson, 120 S. Ct. at
> 2109.  ...The long and short of it is that the summary
> judgment rule applies in job discrimination cases just

as in other cases.  No thumb is to be placed on either side of the scale.

Chapman v. A1 Transport, 229 F.3d 1012, 1026 (11th Cir. 2000).

As demonstrated herein, Patterson cannot present evidence sufficient to create a genuine issue of material fact on any of his claims.  Accordingly, Defendants are entitled to summary judgment on all of Patterson's claims.[2]

## II.   PATTERSON'S RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT CLAIMS BASED ON EVENTS OCCURRING PRIOR TO MAY 4, 1999 ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

In support of his race discrimination claims, Patterson alleges that (1) in 1993, WCW denied him opportunities to perform as a manager for some wrestlers, (2) WCW denied him wrestling or other non-specific opportunities to perform with WCW during the mid-1990's, and (3) WCW denied him an opportunity to create and write its televised wrestling programs in late 1999 when Patterson spoke with J.J. Dillon about his interest in such a position. First Amended Complaint ¶¶ 50-63, Patterson Dep. at 75, 84, 92, 95-99).  Because the first two of these claims are based on alleged events that occurred (if at all) more than two years

---

[2] Patterson's claims against TSI, TEG and TBS are based on theories of derivative liability.  (First Amended Complaint ¶¶ 34-47). Patterson does not claim that TSI, TEG or TBS took any improper actions against Patterson or violated any law as to Patterson. Rather, Patterson claims that WCW took such actions, and that TSI, TEG and TBS should be held accountable because of their purported relationship with WCW.  (Id.)  Because Patterson's claims against WCW fail as a matter of law, Patterson's derivative claims against TSI, TEG and TBS also fail.

before Patterson filed this lawsuit, these claims are barred by
the applicable statute of limitations and fail as a matter of law.

The United States Supreme Court has characterized claims
under 42 U.S.C. § 1981 as personal injury causes of action to
which state statutes of limitations for personal injury actions
apply.  Alexander v. Fulton Cnty., GA, 207 F.3d 1303, 1346 (11th
Cir. 2000).  For § 1981 claims brought in federal courts in
Georgia, "the applicable statute of limitations is found in
O.C.G.A. § 9-3-33 and is 2 years."  Butler v. Matsushita Comm.
Indns. Corp. of U.S.A., 203 F.R.D. 575, 582 (N.D. Ga. 2001).
Patterson filed his Complaint on May 4, 2001.  Accordingly, any of
Patterson's claims based on events arising prior to May 4, 1999
are barred as a matter of law.  Alexander, 207 F.3d at 1346;
Butler, 203 F.R.D. at 582.[3]

Any claims based on Patterson's alleged efforts to perform as
a manager of WCW wrestlers in 1993 or to perform in any other

---

[3] Patterson also brings claims for race discrimination under Title
VII for the same allegations of race discrimination he is pursuing
under § 1981.  To bring a Title VII claim, a Charge of
Discrimination must first be filed with the EEOC within 180 days
from the date of the alleged discriminatory act(s).  42 U.S.C.
§ 2000e-5(e).  Patterson filed his Charge of Discrimination
alleging race discrimination by WCW on May 11, 2000.  Thus, any
Title VII claim by Patterson arising more than 180 days before he
filed his Charge, or before November 13, 1999, is barred by Title
VII's statute of limitations.  Because this limitations period is
shorter than § 1981's two-year limitations period, any claim that
is time-barred under § 1981, as discussed herein, is also time-
barred under Title VII.

capacity with WCW before May 4, 1999 are untimely and barred by the applicable statute of limitations. Id. Any such events would have occurred (if at all) **more than two years** (and in the case of Patterson's claims about supposed actions in 1993, more than **seven years**) before Patterson filed his lawsuit. Therefore, Patterson's claims based on such events must be dismissed.

Incredibly, Patterson also alleges in his Complaint that he was somehow subjected to a racially hostile work environment at WCW even though he never worked there. (First Amended Complaint ¶ 70). It is elemental that to sustain a hostile work environment claim under § 1981, a plaintiff must have performed services on behalf of the defendant or have had some working relationship with the defendant during the two-year period prior to filing his lawsuit. See Shields v. Fort James Corp., 305 F.3d 1280, 1282-1283 (11th Cir. 2002); Alexander, 207 F.3d at 1346; Butler, 203 F.R.D. at 582. By his own admission, Patterson has not satisfied and cannot satisfy this essential element of his hostile work environment claim.

Patterson admits that he did not perform any services for or with WCW at any point after May 4, 1999. (Patterson Dep. at 36-40). Because Patterson cannot point to any services that he provided for WCW within the required statutory time period,

Patterson's hostile work environment claim fails as a matter of law.

### III. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PATTERSON'S RACE DISCRIMINATION CLAIMS BECAUSE HE CANNOT PRODUCE ANY EVIDENCE THAT WCW DISCRIMINATED AGAINST HIM ON THE BASIS OF HIS RACE.

In a disparate treatment case such as this one, Patterson must prove "intentional discrimination" to prevail. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); Patterson v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 153 (2000). As demonstrated herein, Patterson cannot produce **any** evidence that WCW discriminated against him based on his race by denying Patterson's request to J.J. Dillon in late 1999 to work for WCW as the creator and writer of WCW's televised wrestling programming. Thus, Defendants are entitled to summary judgment as to Patterson's race discrimination claims.

Because Patterson cannot present direct evidence of discrimination, the proof scheme articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to his claim of disparate treatment. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Under the McDonnell Douglas proof scheme, Patterson must present circumstantial evidence sufficient to establish a prima facie case of discrimination. Farrior v. H.J. Russell & Company, 45 F. Supp.2d 1358, 1366 (N.D. Ga. 1999).

The mere presentation of circumstantial evidence, however, is not sufficient to defeat a motion for summary judgment. Even if a plaintiff can establish a prima facie case of race discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions regarding the plaintiff. Patterson, 530 U.S. at 142. The defendant is not required to prove absence of discriminatory motive, but merely to articulate some legitimate reason for its actions. Moreover, the defendant's burden is one of production and not persuasion. See id.; Burdine, 450 U.S. at 253.

Once such a reason is articulated, any presumption of discrimination arising out of the prima facie case "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must then "prove by a preponderance of the evidence that the legitimate reasons offered . . . were not [the] true reasons, but were a pretext for discrimination." Texas Dep't of Community Affairs, 450 U.S. at 253; see Patterson, 530 U.S. at 143. The plaintiff must present "concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). "The ultimate burden of persuading the trier of

fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." St. Mary's Honor Center, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 253).

Patterson's only discrimination claim that is not time-barred arises from Patterson's contention that WCW denied him the opportunity to create and write WCW's television wrestling programs in late 1999. Patterson's claim of discrimination boils down to a "failure to hire" claim. Therefore, Patterson must produce evidence that WCW actually and intentionally refused to hire him because of his race. Oncale v. Sundower Offshore Services, Inc., 523 U.S. 75, 78 (1998) (quoting 42 U.S.C. § 2000-2(a)(1)). Patterson cannot present any evidence to satisfy this burden.

To establish a prima facie case that WCW refused to hire Patterson to create and write WCW's wrestling television programs on account of his race under the McDonnell Douglas framework, Patterson must show: (1) that he is a member of a protected class; (2) that he applied and was qualified for a job for which WCW was seeking applications; (3) that, despite his qualifications he was rejected; and (4) that, after his rejection, the employer hired someone outside of Patterson's protected class. Welborn v. Reynolds Metals Co., 810 F.2d 1026, 1028 (11th Cir. 1987). Patterson cannot establish a prima facie case of failure to hire

because the record is devoid of any evidence establishing that (1) Patterson was qualified for the position for which he "applied" or that (2) WCW was seeking applicants for such a position or had a position available.

Patterson cannot offer any evidence that he was in any way qualified to create and write WCW's televised wrestling programs in 1999. Patterson had no prior experience developing storylines for professional wrestling organizations such as WCW and, despite his prior wrestling experience, had been far removed from the wrestling industry for more than ten years. (Dillon Dep. at 206-07, 210-11). He had no experience writing and creating wrestling television programs at any point, let alone wrestling television as it existed at WCW in 1999. (Id.) Thus, Patterson was not qualified for the position for which he purportedly "applied" in his conversation with J.J. Dillon.

Moreover, there is <u>no evidence</u> that WCW was seeking or had available any such "position" at the time that Patterson spoke with J.J. Dillon. In fact, only shortly before Patterson's telephone discussion with Dillon, WCW had contracted with an individual (Vince Russo) from WCW's rival wrestling organization *who had on point experience as a writer for wrestling television programming.* (Patterson Dep. at 98; Russo Dep. at 15, 48). WCW specifically sought out Russo regarding this position and retained

him to supervise and manage the creation and writing of WCW's
wrestling television programs.  (Id.)  Thus, at the time that
Patterson contacted WCW, WCW did not need to consider Patterson
for a position that was already occupied by someone with more
experience and a track record of success.  Because Patterson has
failed to establish that he was in any way qualified for the type
of position he was seeking or that any such position was
available, Patterson cannot establish his prima facie case of
discrimination.  Accordingly, summary judgment should be entered
in Defendants' favor on Patterson's failure to hire claim.

## IV.   PATTERSON'S AGE DISCRIMINATION CLAIM IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

Patterson filed an amended Charge of Discrimination with the
Equal Employment Opportunity Commission on March 26, 2001, in
which, for the first time, he alleged that WCW had discriminated
against him on the basis of his age.  A Charge of Discrimination
alleging age discrimination under the ADEA must be filed with the
EEOC within 180 days from the date of the alleged discriminatory
act.  29 U.S.C. § 626(d)(1).  Thus, any ADEA claim by Patterson
based on alleged actions occurring more than 180 days before he
filed his amended Charge, or before September 27, 2000, is barred
by the ADEA's statute of limitations.

The only alleged activity by WCW on which Patterson relies in
support of his age discrimination claim is barred by this statute

1103527_2.DOC                          -15-

of limitations.  Specifically, Patterson alleges that in 1995, he

met with Eric Bischoff to discuss opportunities at WCW, but Mr.

Bischoff denied him such opportunities on account of his age.

(Patterson Dep. at 95, 110-12).  This claim of age discrimination

is not only entirely conclusory and unsupported, but, *on its face*,

arises from actions that occurred, if at all, more than **five years**

before Patterson filed his Charge alleging age discrimination with

the EEOC.  (Patterson Dep. at 35-37).  Thus, Patterson's age

discrimination claim is time-barred and should be dismissed.   29

U.S.C. § 626(d)(1).

**V.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PATTERSON'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM BECAUSE WCW DID NOT ENGAGE IN ANY OUTRAGEOUS CONDUCT.**

Patterson contends that WCW, by allegedly engaging in

racially and age-related discriminatory conduct, intentionally

inflicted severe emotional distress on him.  (First Amended

Complaint ¶ 77-79).  This claim is baseless.

To establish a claim for intentional infliction of emotional

distress under Georgia law, a plaintiff must establish:   (1)

intentional or reckless conduct; (2) extreme and outrageous

conduct by the defendant; (3) severe emotional distress suffered

by the plaintiff; and (4) a causal connection between the conduct

and the emotional distress.   Hendrix v. Phillips, 207 Ga. App.

394, 395, 428 S.E.2d 91, 92-93 (1993).

To be "extreme and outrageous," the alleged conduct must be so "terrifying or insulting as naturally to humiliate, embarrass or frighten" the plaintiff and so severe that "no reasonable man could be expected to endure" these actions.  Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992).  Liability for intentional infliction of emotional distress does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Ward v. Papa's Pizza To Go, Inc., 907 F. Supp. 1535, 1540 (S.D. Ga. 1995).  Thus, when a plaintiff alleges that conduct such as race or age discrimination constitutes intentional infliction of emotional distress, the alleged conduct must be severe, such as an on-going pattern of explicit and oppressive harassment that includes or resembles a physical assault.  See Coleman v. Housing Auth. of Americus, 191 Ga. App. 166, 381 S.E.2d 303 (1989).  Patterson does not even come close to meeting this standard.

Patterson cannot provide any evidence of "extreme and outrageous" conduct by WCW.  Patterson testified that WCW's only "acts" were its alleged failure to respond to his purported telephone messages to offer him opportunities to perform or work with WCW, and that there is nothing other than WCW's alleged acts

of discrimination that caused him any alleged emotional harm.[4]
(Patterson Dep. at 125). The refusal to hire an individual under
circumstances that could constitute unlawful discrimination are
insufficient to support an intentional infliction of emotional
distress claim. Ward, 907 F. Supp. at 1542 (granting summary
judgment to defendant employer). Because the undisputed evidenced
shows that Patterson was not subjected to discriminatory
treatment, and because Patterson must establish more than just
alleged discriminatory conduct to sustain his intentional
infliction of emotional distress claim, summary judgment should be
entered on this claim.

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion for
Summary Judgment on all of Patterson's claims asserted in this
action should be granted, and all of Patterson's claims should be
dismissed.

---

[4] Further, as discussed previously, virtually all of the actions
Patterson contends support his race and age discrimination claims
are barred by the applicable statutes of limitations. To the
extent this claim arises from acts that occurred more than two
years before Patterson filed this Complaint, it is time-barred.
O.C.G.A. § 9-3-33; Bauer v. North Fulton Medical Ctr., Inc., 241
Ga. App. 568, 527 S.E.2d 240 (1999).

1103527_2.DOC                           -18-

This 30th day of January, 2003.

TROUTMAN SANDERS LLP

JOHN J. DALTON
Georgia Bar No. 203700
JAMES A. LAMBERTH
Georgia Bar No. 431851
ERIC A. RICHARDSON
Georgia Bar No. 233873
EVAN H. PONTZ
Georgia Bar No. 583577

Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000

Attorneys for Defendants

1103527_2.DOC

## CERTIFICATION

Pursuant to Local Rule 7.1(D), I certify that this Memorandum of Law has been prepared with one of the fonts and point selections ("Courier New 12") approved by the Court in Local Rule 5.1(B).

This 30th day of January, 2003.

Evan H. Pontz
TROUTMAN SANDERS LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000



# EXHIBIT / ATTACHMENT

## _____A_____

(To be scanned in place of tab)

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

<u>Walker v. World Championship Wrestling, Inc., Turner Sports,
    Inc. and Turner Broadcasting System, Inc.</u>, Civ. File No.
    1:00-CV-0367-CC
<u>Onoo v. World Championship Wrestling, Inc., Turner Sports, Inc.
    and Turner Broadcasting System, Inc.</u>, Civ. File No. 1:00-
    CV-0368-CC
<u>Norris v. World Championship Wrestling, Inc., Turner Sports,
    Inc. and Turner Broadcasting System, Inc.</u>, Civ. File No.
    1:00-CV-0369-CC
<u>Easterling v. World Championship Wrestling, Inc. and Turner
    Sports, Inc. and Turner Broadcasting System, Inc.</u>, Civ.
    File No. 1:00-CV-1715-CC
<u>Davis v. World Championship Wrestling, Inc. and Turner Sports,
    Inc. and Turner Broadcasting System, Inc.</u>, Civ. File No.
    1:00-CV-1716-CC
<u>Worthen v. World Championship Wrestling, Inc. and Turner Sports,
    Inc. and Turner Broadcasting System, Inc.</u>, Civ. File No.
    1:00-CV-1717-CC
<u>Speight v. World Championship Wrestling, Inc. and Turner Sports,
    Inc. and Turner Broadcasting System, Inc.</u>, Civ. File No.
    1:00-CV-1718-CC
<u>Saengsiphan v. World Championship Wrestling, Inc. and Turner
    Sports, Inc. and Turner Broadcasting System, Inc.</u>, Civ.
    File No. 1:00-CV-1719-CC
<u>Reeves v. World Championship Wrestling, Inc. and Turner Sports,
    Inc. and Turner Broadcasting System, Inc.</u>, Civ. File No.
    1:00-CV-1720-CC
<u>Patterson v. World Championship Wrestling, Inc., Turner Sports,
    Inc., Turner Entertainment Group, Inc. and Turner
    Broadcasting System, Inc.</u>, Civ. File No. 1:01-CV-1152-CC

### **AFFIDAVIT OF DIANA MYERS**

DIANA MYERS, who having personally appeared before the
undersigned officer duly authorized to administer oaths and
having been first duly sworn according to law, deposes and
states the following:

1.    My name is Diana Myers.   I am of majority age, and I give this testimony of my own free will.   I have personal knowledge of and am competent to testify to the facts stated herein.   The facts stated herein are true and correct.

2.    I was employed by Universal Wrestling Corporation (f/k/a/ World Championship Wrestling, Inc. and hereinafter referred to as "WCW") beginning in October 1997 and most recently held the title of Vice President of Business and Legal Affairs.   In my position at WCW, I was familiar with virtually all aspects of WCW's business and legal affairs.

3.    WCW created, produced, and marketed professional wrestling programs during the 1990s and through March 2001. WCW's wrestling programs were both witnessed by live audiences and aired on various television networks and pay-per-view cable and satellite systems.   WCW's wrestling programs, both live and taped, were created by writers and producers at WCW, with the goal of entertaining wrestling fans and general audiences nationwide.   The individuals responsible for writing WCW's wrestling programs were often referred to as "bookers".

4.    WCW's wrestling programs included appearances by many types of live or "on-screen" talent, including wrestlers, match

referees, and other wrestling talent appearing on camera or at
live (but non-televised) events. These individuals appearing in
wrestling programs provided their services to WCW as independent
contractors, either through formal written contracts or without
written agreements.

5. Wrestlers, referees and other wrestling talent were
aware of the planned outcome of each wrestling match or
appearance and provided appropriate services to attempt to
convincingly carry out that pre-determined outcome of the event
for the audience.

6. WCW had much commercial and financial success during
the mid to late 1990s. In 1999, WCW's business suffered from a
sharp downturn and WCW was losing significant sums of money.
Therefore, WCW began downsizing its operations by reducing the
number of talent it contracted with, reducing the compensation
of existing talent, and producing fewer and fewer wrestling
programs. As part of the downsizing, WCW considered canceling
some of its shows. In early 2000, WCW in fact terminated some
of its programs, including a taped show commonly referred to as
its "Saturday Night" show. Before it was canceled, the task of
writing or "booking" the Saturday Night wrestling show was being
performed by individuals experienced in booking wrestling

programs.   At the same time, WCW also reduced the length of some of its other remaining wrestling programs.

7.    Due to these business circumstances and WCW's downsizing efforts, in 1999 and over the next two years, WCW had less and less need for wrestling services, including on-screen talent, trainers, referees and writers or "bookers". Specifically, in and after 1999, there were no open opportunities available for a position solely as a booker of WCW's Saturday Night wrestling program and WCW was not actively seeking bookers solely for its Saturday Night show.

8.    The downsizing efforts did not stop WCW's business downturn, and in March 2001, WCW sold certain of its assets and completely closed down its operations.   After the sale of assets was completed, WCW changed its name to Universal Wrestling Corporation to close up remaining corporate operations.

9.    In my capacity as Vice President of Business and Legal Affairs for WCW, I was responsible for reviewing and documenting merchandizing agreements in which WCW was a party.

10.    In 1998, WCW entered into a merchandizing agreement with Toshiba in Japan to produce and distribute a music compact

disc in Japan entitled "New World Order" containing WCW entrance music.  Mr. Kazuo "Sonny" Onoo was involved in this agreement. Mr. Onoo was paid all money he was due from WCW regarding this New World Order compact disc.

11.  WCW also entered into a different agreement with Tommy Boy Records.  Pursuant to the terms of this agreement, Tommy Boy Records developed and distributed a music CD entitled "WCW Mayhem."  WCW Mayhem was a compilation of WCW music along with material created by Tommy Boy artists.

12.  Kazuo "Sonny" Onoo was not a party to or involved in WCW's merchandizing agreement with Tommy Boy Records regarding the WCW Mayhem CD.  Mr. Onoo did not have a financial interest in the CD's creation, marketing or sales, nor was he entitled to any profits or other compensation from the sale of this CD.

13.  As a result of my position at WCW, I also have personal knowledge regarding how on-air talent was compensated by WCW and the basis of their level of compensation.  Further, I have personal knowledge regarding how on-air talent was generally utilized by WCW.

14.  At WCW, Wrestlers were compensated and given wrestling opportunities that were commensurate with their skill level and crowd appeal.  Mr. Walker was no exception.

15.  Mr. Walker wrestled in over eighty (80) matches while he was under contract with WCW.  In some of these matches, he prevailed over his opponent.  In other instances, the match was scripted in Mr. Walker's opponent's favor.

FURTHER AFFIANT SAYETH NAUGHT.

This **12**th day of December, 2002.

_____
DIANA MYERS

Sworn to and subscribed
before me this **12**th day
of December, 2002.

_____
Notary Public

My Commission Expires:
_March 31, 2005_

Sandra M. Gaudet
Commission # DD 002932
Expires March 31, 2005
Bonded Thru
Atlantic Bonding Co., Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLAUDE PATTERSON,                    )
                                     )
               Plaintiff,            )
                                     )        CIVIL ACTION FILE
v.                                   )
                                     )        NO. 1:01-CV-1152-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,  )
TURNER SPORTS, INC., TURNER          )
ENTERTAINMENT GROUP, INC., and       )
TURNER BROADCASTING SYSTEM, INC.,    )
                                     )
               Defendants.           )

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of this ***MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*** upon the interested parties by hand delivery to:

Cary Ichter
Kelly Jean Beard
Charles Gernazian
Michelle M. Rothenberg-Williams
MEADOWS, ICHTER AND BOWERS, P.C.
Fourteen Piedmont Center, Suite 1100
3535 Piedmont Road
Atlanta, GA  30305

-21-

This 30th day of January, 2003.

_____
Evan H. Pontz
TROUTMAN SANDERS LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000

# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLAUDE PATTERSON,               )
                                )
          Plaintiff,            )
                                )
v.                              )       CIVIL ACTION FILE
                                )       NO. 1:01-CV-1152-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,)
TURNER SPORTS, INC., TURNER     )
ENTERTAINMENT GROUP, INC., and  )
TURNER BROADCASTING SYSTEM, INC.,)
                                )
          Defendants.           )

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants  Universal  Wrestling  Corporation  (f/k/a  World
Championship  Wrestling,  Inc.)  ("WCW"),  Turner  Sports,  Inc.
("TSI"),  Turner  Entertainment  Group,  Inc.  ("TEG"),  and  Turner
Broadcasting  System,  Inc.  ("TBS")  submit  this  Statement  of
Undisputed Material Facts in support of their Motion for Summary
Judgment as to all claims brought by Plaintiff Claude Patterson.

1.   WCW created, produced, and marketed professional
wrestling events during the 1990s and through March 2001, which
were seen by live audiences and/or aired on various television
networks and pay-per-view, cable and satellite systems.  (Myers
Aff. ¶ 3).

2.   The wrestlers and other on-screen wrestling talent who
appeared in WCW's wrestling events generally provided their
services to WCW as independent contractors, either through formal

written contracts or without written agreements.  (Myers Aff. ¶ 4).

3.    WCW's wrestling events, both live and taped, were created by a creative team of writers and producers at WCW, with the goal of entertaining wrestling fans and general audiences nationwide.  (Myers Aff. ¶ 4).

4.    After having much commercial and financial success in the mid-to-late 1990s, WCW's business suffered a sharp downturn in 1999.  (Myers Aff. ¶ 6).

5.    As a result, WCW restructured its business operations.  (Id.)

6.    Despite WCW's efforts, WCW's business downturn continued, and in March 2001, WCW sold certain of its assets, ceased its operations, and changed its name to Universal Wrestling Corporation.  (Myers Aff. at ¶ 8).

7.    Claude Patterson first began wrestling professionally in 1965, under the wrestling moniker "Thunderbolt" Patterson.  (Patterson Dep. at 20; First Amended Complaint ¶ 48).

8.    Patterson continued to wrestle professionally into the 1980s.

9.    As of 1991, Patterson was no longer in top wrestling or physical condition, and newer and different faces began to dominate the wrestling industry.  (Patterson Dep. at 51).

10.   Patterson was consequently unable to continue earning a living as a professional wrestler and began working for a non-profit organization known as "Athletes Supporting Kids." (Patterson Dep. at 50-51).

11.   According to Patterson, in late 1999, he contacted WCW and left telephone messages stating that he had some ideas and suggestions about WCW and the ratings of its televised wrestling programs.   (Patterson Dep. at 97-99; Dillon Dep. at 206, Exh. 54).

12.   Patterson's messages were forwarded to J.J. Dillon, a WCW employee.   (Dillon Dep. at 206; Patterson Dep. at 97-98).

13.   Dillon had known Patterson for many years and both men had previously been wrestlers together.   (Patterson Dep. at 101; Dillon Dep. at 206).

14.   Dillon spoke to Patterson, and Patterson apparently offered several suggestions that he believed would improve the ratings of WCW's televised wrestling programs.   (Id.)

15.   Patterson also expressed some interest in working for WCW and taking over the creation and writing of WCW's televised wrestling programs.   (Patterson Dep. at 98-99; Dillon Dep. at 206).

16.   Dillon knew that Patterson had never been involved in the creative side of scripting and writing wrestling events and had no experience whatsoever creating or writing televised

working for WCW and taking over the writing and creating of WCW's live or televised wrestling programs.  (Dillon Dep. at 211, Exh. 54).

This 30th day of January, 2003.

TROUTMAN SANDERS LLP

_Evan H. Pontz_

JOHN J. DALTON
Georgia Bar No. 203700
JAMES A. LAMBERTH
Georgia Bar No. 233873
ERIC A. RICHARDSON
Georgia Bar No. 431851
EVAN H. PONTZ
Georgia Bar No. 583577

Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLAUDE PATTERSON,                          )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )    CIVIL ACTION FILE
                                           )    NO. 1:01-CV-1152-CC
WORLD CHAMPIONSHIP WRESTLING, INC.,)
TURNER SPORTS, INC., TURNER                )
ENTERTAINMENT GROUP, INC., and             )
TURNER BROADCASTING SYSTEM, INC.,          )
                                           )
            Defendants.                    )

## CERTIFICATE OF SERVICE

        This is to certify that I have this day served a copy of

this ***DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN***

***SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT*** upon the interested

parties by hand delivering a copy of the same to:

                    Cary Ichter
                    Kelly Jean Beard
                    Charles Gernazian
                    Michelle M. Rothenberg-Williams
                    MEADOWS, ICHTER AND BOWERS, P.C.
                    Fourteen Piedmont Center, Suite 1100
                    3535 Piedmont Road
                    Atlanta, GA  30305

        This 30th day of January, 2003.


                    _____
                    Evan H. Pontz
                    TROUTMAN SANDERS LLP
                    Suite 5200, Bank of America Plaza
                    600 Peachtree Street, N.E.
                    Atlanta, GA  30308-2216
                    (404) 885-3000

1108518_1.DOC