

FILED IN CLERK'S ORIGINAL
U.S.D.C. Atlanta

FEB 21 2003

LUTHER D. THOMAS, Clerk
By: _____ Clerk

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Davis v. World Championship Wrestling, Inc. and Turner
Sports, Inc., Civ. File No. 1-00-CV-1716-CC;
Saengsiphan v. World Championship Wrestling, Inc. and
Turner Sports, Inc., Civ. File No. 1-00-CV-1719-CC;
Reeves v. World Championship Wrestling, Inc. and Turner
Sports, Inc., Civ. File No. 1-00-CV-1720-CC;
Onoo v. World Championship Wrestling, Inc., Turner Sports,
Inc., Civ. File No. 1:00-CV-0368-CC
Norris v. World Championship Wrestling, Inc., Turner
Sports, Inc., Civ. File No. 1:00-CV-0369-CC
Walker v. World Championship Wrestling, Inc., Turner
Sports, Inc., Civ. File No. 1:00-CV-0367-CC
Claude Patterson v. World Championship Wrestling, Inc.,
Turner Sports, Inc. and Turner Entertainment Group, Inc.,
Civ. File No. 1:01-CV-1152-CC

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE ANSWERS OR FOR OTHER APPROPRIATE SANCTIONS

### I.   INTRODUCTION AND STATEMENT OF RELEVANT FACTS

As is set forth in Plaintiffs' initial brief, this motion arises out of the calculated discovery abuse of Defendant World Championship Wrestling, Inc. ("WCW"). Specifically, WCW has purposefully withheld information regarding the races of its wrestlers under the ruse that it simply did not have access to that information. It is now clear that WCW can avail itself of access to racial identification information, as it has done in previous litigation. Thus, Plaintiffs seek appropriate sanctions for WCW's purposeful obstruction of Plaintiffs' discovery efforts.

88

WCW argues that this motion is "harassing and abusive" because it "does not possess records about the races and ethnicities of its wrestlers and never tracked or maintained such documents or information." See Defendants' Response to Plaintiffs' Motion to Strike Answers ("Response"), p. 2. This argument misses the point entirely. Plaintiffs do not contend that WCW's representations to the Court that it lacked certain records regarding its wrestlers were untruthful; rather, at issue is the representations WCW has made to this Court arising from that fact. Although WCW has steadfastly maintained in this case that it is incapable of providing the racial identifcation information Plaintiffs seek, it is now clear from the Ross litigation referenced in Plaintiffs' previous brief that WCW's supposed lack of race-identifying records is a ruse for not providing the information Plaintiffs seek -- not an impediment to doing so.

As Plaintiffs suggested in their initial brief, a critical inquiry for this Court to make in deciding this issue is whether the Court would have allowed WCW to insist that it did not know the racial identification of wrestlers for discovery purposes in this case after it had taken a diametrically opposition position in Ross. Surely, the Court would not have allowed WCW to identify the race of over 300 wrestlers for summary judgment

purposes in <u>Ross</u>, while denying knowledge of the race of its wrestlers in this case for discovery purposes.  If Plaintiffs are correct in that conclusion, then it cannot be disputed that WCW's discovery gamesmanship and dishonesty with the Court has hamstrung Plaintiffs in these cases, cost Plaintiffs tens of thousands of dollars in unnecessary work and violated counsel's duty of candor with the Court.[1]

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A.   The Relevance of the Information Plaintiffs Seek

Plaintiffs' need for the race-related information is twofold.  First, a plaintiff in a Title VII action can prove "pattern and practice" evidence of discrimination through statistical evidence.  See <u>EEOC v. Joe's Stone Crab, Inc.</u>, 220 F.3d 1263, 1286-87 (11th Cir. 2000).  Second, statistical analysis can be used to establish pretext; i.e., that a defendant's purported benign employment practices are a subterfuge for unlawful discrimination.  See <u>Teamsters v. United States</u>, 431 U.S. 324 (1977); <u>see also</u> <u>Washington v. Brown & Williamson Tobacco Corp.</u>, 756 F. Supp. 1547, 1554 n.5 (N.D. Ga. 1991), <u>aff'd</u> 959 F.2d 1566 (11th Cir. 1992)(statistical

---

[1]The Court will note that the same law firm represented WCW in the <u>Ross</u> case as represents WCW in this matter.

disparities are "relevant to making out a prima facie case of proving pretext").[2]

Indeed, WCW has attempted to exploit the absence of racial identification information in connection with its motions for summary judgment, arguing that Plaintiffs' statistical analysis is based upon "uneducated guesses about applicants'" race. See, e.g., Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment (Davis), pp. 17-8. Knowing that it wanted to make this argument from the outset, WCW has argued that it could not identify the race of WCW wrestlers without self-identification. It is now apparent, however, took a completely inconsistent position in the Ross case, where WCW took a position on racial identification notwithstanding the lack of record WCW now claims it would need to do so.

### B.   WCW Has Deliberately Misrepresented its Ability to Provide the Information Plaintiffs Seek

The critical issue presented by this motion boils down to simply this: accepting as true WCW's assertion that it lacks

---

[2]    Although Plaintiffs correctly asserted in their previous brief that employee-race information is relevant to prove discrimination under a "disparate impact" theory, WCW correctly notes that Plaintiffs are currently pursuing an intentional discrimination theory -- not one of disparate impact. Plaintiffs regret any inconvenience or confusion caused by this superficial labeling error. This error notwithstanding, Plaintiffs' need for the racial identification information to prove their claims of unlawful discrimination cannot be gainsaid in light of the authority referenced above.

records identifying the races of its wrestlers, **can** WCW
nonetheless provide the information Plaintiffs seek?  The <u>Ross</u>
litigation demonstrates beyond question that the answer to this
inquiry is "yes."  The pleadings Plaintiffs have presented from
that litigation show that, the absence of certain records
notwithstanding, WCW is indeed capable of identifying the races
of the "large majority" of its wrestlers.  <u>See</u> Plaintiffs'
Motion to Strike Answer or For Other Appropriate Sanctions and
Memorandum of Law in Support Thereof ("Motion"), p. 3.[3]

Once the issue is properly framed and the Court begins from
the premise that WCW can indeed provide the information
Plaintiffs seek, it becomes clear that WCW has engaged in
improper stonewalling.  In the <u>Ross</u> litigation, when it was in
its best interests to do so, WCW identified the races of the
"large majority" of its wrestlers.  In the present case, it has

---

[3] WCW was not uncomfortable with taking a position on racial
identification in the <u>Ross</u> case because Ross was the only black
among fourteen wrestlers who were terminated by WCW at or about
the same time.  Therefore, WCW was positioning itself to argue
that a mere 7.14% of the pool of terminated wrestlers were
black.  In this case, however, WCW knew that a statistical
evaluation of its entire workforce would be disastrous for its
defense.  Accordingly, WCW reinvented its position regarding its
knowledge of the racial composition of its workforce for this
case.  Now, unlike its position in <u>Ross</u>, WCW insists that it
must have a record of racial self-identification to be able to
identify the race of a worker.  While WCW offers absolutely no
authority for that proposition, it is clear that WCW's discovery
gamesmanship has been an effort to bolster that position.

refused to provide the identical information -- not because it cannot, but rather in an effort to prevent Plaintiffs from proving a pattern and practice of discrimination or pretext.

Indeed, **even in this case,** WCW has taken affirmative positions as to the racial composition of its wrestlers when it suited its particular purpose to do so. See Defendants' Responses to Initial Disclosures, p. 9 ("Four of the roughly twelve individuals signed to trainee Agreements at this time were racial or ethnic minorities, while most of the roughly 30 individuals who were not provided with the opportunity to sign a trainee Agreement were Caucasian").

Plaintiffs respectfully submit that this is precisely the type of discovery gamesmanship that authorizes the imposition of sanctions. As is set forth in Plaintiffs' initial brief, any of the following sanctions are appropriate:

1). **_An Order Striking WCW's Answer._**

Though draconian, this remedy is appropriate where, as here, a litigant engages in willful discovery misconduct. See Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987)(Where party fails "fails to cooperate in discovery," Rule 37 permits the court to "to strike out pleadings and render default judgment against the disobedient party"). See also Malautea v. Suzuki Motor Corp., 148 F.R.D. 362, 373 (S.D. Ga. 1991)

- 6 -

(striking answer where defendant engages in "bad faith decision to avoid revealing the truth at all costs").

2.) **An Order Striking WCW's Summary Judgment Motions.**

WCW should not be permitted to profit from its deliberate concealment of information and misrepresentations regarding its ability to access that information.  Thus, the Court may also in its discretion enter an Order striking WCW's summary judgment motions in the Onoo, Walker, and Norris matters.

3). **An Order Estopping WCW From Challenging Plaintiffs' Evidence Regarding the Races of WCW Wrestlers and Awarding Plaintiffs the Fees and Expenses They Have Incurred as the Result of WCW's Misconduct**

As Plaintiffs explain in their initial brief, WCW's improper discovery tactics have shifted to Plaintiffs the burden of deriving the information that WCW made a strategic decision to withhold.  WCW should be held accountable to this decision. Thus, WCW should be estopped from challenging Plaintiffs' evidence regarding the race of WCW wrestlers and be required to reimburse Plaintiffs the fees and expenses they have incurred as the result of WCW's misconduct.

WCW dismisses this final option as "ridiculous" and argues that "all relevant evidence about the race or ethnicity of particular wrestlers should be offered as necessary, and the competency, form and value of such evidence should be considered and weighed at the appropriate time."  See Response, p. 13.

- 7 -

This argument overlooks the fact that WCW has already missed the opportunity to present the disputed evidence at the "appropriate" time: during the discovery period.  Indeed, it is precisely because WCW has **not** "properly responded to Plaintiffs' discovery requests" -- as WCW erroneously insists -- that an Order estopping WCW from challenging Plaintiffs' evidence regarding the races of WCW wrestlers is appropriate.

### III. CONCLUSION

WCW has willfully withheld information central to Plaintiffs' discrimination claims under the untruthful ruse that it was incapable of providing this information.  This is egregious discovery misconduct.  Moreover, Plaintiffs have been materially prejudiced by these developments.  The Court should enter appropriate sanctions accordingly.

Respectfully submitted this 21st day of February, 2003.

_____
Cary Ichter, Esq.
Ga. State Bar No. 382515
Charles Gernazian
Georgia Bar No. 291703
Michelle M. Rothenberg
Georgia Bar No. 615680
Attorneys for Plaintiffs

**MEADOWS, ICHTER & BOWERS, P.C.**
Fourteen Piedmont Center, Suite 1100
3535 Piedmont Road
Atlanta, GA  30305
(404) 261-6020

Attorneys for Plaintiffs

- 8 -

## CERTIFICATE OF SERVICE

This is to certify that I have this date served opposing counsel to this action with the foregoing **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE ANSWER OR FOR OTHER APPROPRIATE SANCTIONS** by depositing a copy of the same in the United States Mail with adequate postage, addressed as follows:

> Eric Richardson, Esq.
> Evan Pontz, Esq.
> Troutman Sanders LLP
> Suite 5200, Bank of America Plaza
> 600 Peachtree Street, N.E.
> Atlanta, Georgia  30308-22165

This 21st day of February, 2003.

Cary Ichter
Georgia Bar No. 382515